Filed 10/23/25  Stewart v. Universal Health Services of Rancho Springs CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SARAH STEWART et al., | D085171 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1903331) |
| UNIVERSAL HEALTH SERVICES OF RANCHO SPRINGS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Harold W. Hopp, Sunshine S. Sykes, Eric A. Keen and Craig G. Riemer, Judges.  Reversed and remanded with directions.

Aiman-Smith & Marcy and Joseph Clapp for Plaintiff and Appellant.

Littler Mendelson, Stacey E. James and Christina H. Hayes for Defendant and Respondent.

Sarah Stewart brought a class action lawsuit against her employer, Universal Health Services of Rancho Springs, Inc.—which does business under the name Southwest Healthcare System—that asserted a Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) cause of action. Stewart alleged Universal Health violated Industrial Welfare Commission

Wage Order 5(9)(A) and provisions of the Labor Code by requiring employees to provide and maintain their own employer-mandated, color-coded scrubs.

The claims originally proceeded in court, but following the United States Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, Universal Health successfully moved to compel arbitration of Stewart's individual PAGA claim. Stewart challenges the court's orders compelling arbitration, confirming the arbitration award, denying her motion for summary adjudication, granting Universal Health's motion for summary adjudication, and limiting potential PAGA penalties.

Under a plain language reading of the arbitration agreement, we conclude the trial court should not have compelled Stewart to arbitrate her individual PAGA claim; accordingly, we reverse the judgment confirming the arbitration award and remand for the court to vacate its order compelling arbitration, enter a new order denying Universal Health's motion to compel arbitration, and conduct further proceedings consistent with this opinion.

We further conclude the court erred in denying Stewart's motion for summary adjudication on the ground it was "procedurally defective because it does not seek to completely dispose of the cause of action to which it is directed." By statute, a party can seek summary adjudication as to "one or more issues of duty" if the party argues "one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs." (Code Civ. Proc., § 437c(f)(1).) We accordingly remand to the trial court to vacate its order denying the motion on this procedural basis and conduct further proceedings consistent with this opinion.

Because the outcome of Stewart's motion for summary adjudication could moot the remaining interlocutory orders from which Stewart appeals,

we decline to exercise our discretion under Code of Civil Procedure section 906 to reach their merits.

## I.

### A.

Universal Health operates two hospitals in Riverside County. In September 2015, it revised its Personal Appearance Policy and Procedure to require employees in specific departments to wear scrubs of specified colors.

Stewart was hired by Universal Health as a clinical laboratory scientist in April 2017. At the time of her hire, clinical laboratory scientists were required to wear burgundy scrubs.

As of April 2019, Universal Health implemented an annual uniform stipend. At the same time, Universal Health revised its policy to no longer require pharmacists or clinical laboratory scientists, who are not patient-facing, to wear scrubs.

### B.

In June 2019, Stewart filed a class action lawsuit against Universal Health.

Her PAGA claim alleged Universal Health violated IWC Wage Order 5(9)(A), and in turn Labor Code section 1198, by (1) failing to provide scrubs and instead requiring proposed class members to purchase them and (2) requiring class members to maintain their scrubs. Steward also asserted Universal Health violated section 2802(a) by failing to reimburse them for the cost of scrubs (1) purchases and (2) maintenance. For these violations, Stewart sought "[c]ivil penalties in an amount to be proved at trial."

### C.

Stewart moved for summary adjudication on an issue of duty—namely, whether IWC Wage Order 5 obliges Universal Health to provide and

maintain employees' colored scrubs. The court denied the motion as "procedurally defective[,] because it does not seek to completely dispose of the cause of action to which it is directed."

Universal Health moved for summary judgment or, in the alternative, summary adjudication, maintaining colored scrubs are not "uniforms" under IWC Wage Order 5 and, even were that not the case, it had no duty to reimburse employees for washing their scrubs. The court denied summary judgment but granted summary adjudication in part. The court concluded triable issues of material fact existed as to whether "the specific color scrubs are generally usable by employees in their occupation" such that they were not uniforms. But the court granted summary adjudication on reimbursement for scrubs maintenance. The court found (1) Universal Health met its initial burden of showing that the colored scrubs required minimal care and therefore maintenance costs were not reimbursable and (2) Stewart failed to produce evidence showing a triable issue of material fact.

Later, the court granted Universal Health's motion to limit potential PAGA penalties. It concluded PAGA penalties would be assessed per violation rather than per pay period. It further concluded Stewart was entitled to one penalty only for both failure to provide uniforms and failure to reimburse for the cost of uniforms.

### D.

When she was hired in 2017, Stewart signed an arbitration agreement.

In 2022, *Viking River* determined the Federal Arbitration Act preempted *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 to the extent it "prohibits division of a PAGA action into constituent" individual and nonindividual claims. (*Viking River*, 596 U.S. at pp. 649, 661.) Following that decision, Universal Health moved to compel

4

arbitration of Stewart's individual PAGA claim and to dismiss her nonindividual PAGA claim.

The court granted the motion to compel Stewart's individual PAGA claim to arbitration. It reasoned that, under a plain reading of the agreement, Stewart agreed to arbitrate all her employment-related claims, including her individual PAGA claim. The court denied the motion to dismiss Stewart's nonindividual PAGA claim, but stayed it until arbitration resolved.

E.

The arbitrator concluded colored scrubs were not uniforms for purposes of IWC Wage Order 5, so Universal Health was not required to provide them. He therefore found no PAGA violation.

After arbitration concluded, Universal Health moved in the trial court to confirm the arbitration award. Stewart sought to vacate the award.

The court confirmed the arbitration award. It concluded the arbitrator was not "completely irrational" in considering extrinsic aids and case law interpreting the Wage Order to reach its conclusion.

The court entered judgment in favor of Universal Health and dismissed the representative PAGA claim without prejudice.

II.

A.

Stewart claims the trial court erred in granting Universal Health's motion to compel arbitration. We agree.

1.

A court shall order parties to arbitrate a controversy "if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2.) "Whether the parties agreed to arbitrate all or a portion of 'the present controversy turns on the language of the arbitration clause.'" (*Duran*

5

*v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65.) "We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence." (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." (*Ibid.*) "The words of a contract are to be understood in their ordinary and popular sense." (Civ. Code, § 1644.)

2.

The arbitration agreement here, "[e]xcept as it otherwise provides," "applies to any past, present or future dispute arising out of or related to [Stewart]'s application for employment, employment[,] and/or termination of employment with" Universal Health.

Stewart and Universal Health "agree[d] to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." The agreement included a Private Attorney General Waiver, under which "[t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action." But that waiver "does not apply to any claim an Employee brings in arbitration as a private attorney general solely on the Employee's own behalf and not on behalf of or regarding others." Key here is the related severability provision:

> The Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil

court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances, the private attorney general action must be litigated in a civil court of competent jurisdiction.

Finally, the agreement states that the "Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration."

3.

Stewart claims her "private attorney general action" must be litigated in court because she chose to challenge the enforceability of the PAGA waiver in court, as the agreement specifies she should. Stewart argues the phrase "private attorney general action" means both individual and nonindividual representative PAGA claims because when the agreement wants to specify individual or nonindividual representative claims, it does so. Universal Health, on the other hand, argues the arbitration agreement applies to "'any . . . dispute . . . related to [Stewart]'s . . . employment,'" which includes Stewart's individual PAGA claim. We agree with Stewart.

While Universal Health correctly points out the FAA broadly favors arbitration and "'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" citing *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24-25, the language of this agreement brooks no such doubt.

Although the arbitration agreement broadly provides for arbitration of "any . . . dispute . . . related to [Stewart]'s . . . employment," it carves out exceptions to the broad rule. Some of those exceptions are expressly stated in section 3 of the agreement, titled "Limitations On How This Agreement

7

Applies." Others, like the one applicable here, appear elsewhere in the agreement.

Here, the section of the agreement containing the Private Attorney General Waiver and specifying how it operates identifies three classifications of PAGA claims or actions: (1) a "private attorney general representative action," (2) "any claim an Employee brings in arbitration as a private attorney general solely on the Employee's own behalf and not on behalf of or regarding others," and (3) a "private attorney general action." We presume the contract intended different meanings to be ascribed to each of these phrases. (*Ford v. The Silver F, Inc.* (2025) 110 Cal.App.5th 553, 569.) To give separate effect to the phrases "private attorney general representative action" and "private attorney general action" as used by the parties, therefore, we conclude the former refers to an action asserting only representative PAGA claims on behalf of other employees, while the latter refers to an action asserting both representative PAGA claims on behalf of other employees *as well as* individual PAGA claims. (*Ibid.*)

That established, we turn to interpreting the parties' arbitration agreement.

The parties agreed "[t]he Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable." Such is the case here.

Stewart brought an action in state court alleging both a nonindividual representative PAGA claim as well as an individual PAGA claim, and the trial court correctly found the Private Attorney General Waiver unenforceable. Under *Iskanian*, "an employment agreement [that] compels

8

the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." (*Iskanian*, 59 Cal.4th at p. 384.) The waiver disclaims any "right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action." A virtually identically worded waiver has been found unenforceable. (See *Juarez v. Wash Depot Holdings, Inc.* (2018) 24 Cal.App.5th 1197, 1200, 1202-1203.)

"In such instances," the arbitration agreement dictates that "the private attorney general action must be litigated in a civil court of competent jurisdiction." This key provision notably does not say only "private attorney general representative" claims must be litigated in court while any claims brought by Stewart "as a private attorney general solely on [her] own behalf and not on behalf of or regarding others" must be arbitrated. In *Viking River*, for example—where the Supreme Court compelled arbitration of the employee's individual PAGA claims—the severability clause provided "if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.'" (*Viking River*, 596 U.S. at p. 647.) Instead, to give effect to the different phrases the agreement here uses, we must conclude the entire private attorney general action—including individual PAGA claims—must be litigated in court under these instances.

We are unpersuaded by Universal Health's contrary arguments.

First, Universal Health argues Stewart "contend[s] that the representative PAGA Waiver applies to both her individual and [nonindividual] representative PAGA claims." But Stewart's and our interpretation rests not on whether the waiver covers Stewart's claims but rather on the procedure applied when the waiver is found unenforceable and severed. At any rate, the agreement's exception to the PAGA waiver does not

9

apply here. While the waiver expressly "does not apply to any claim an Employee brings *in arbitration* as a private attorney general solely on the Employee's own behalf and not on behalf of or regarding others" (italics added), Stewart did not bring her claim *in arbitration* but rather *in court*. As a result, Universal Health's argument about this waiver exception is unpersuasive.

Second, Universal Health claims Stewart's construction is "entirely inconsistent with *Viking River*'s mandate that PAGA claims contain both an individual and a [nonindividual] representative component, and the individual component can be compelled to arbitration under the FAA." Stewart's and our interpretation recognizes PAGA claims can be comprised of both individual claims and nonindividual representative claims and the component individual PAGA claims "can be" compelled to arbitration. The interpretation merely concludes this specific agreement *does not* compel the claims to arbitration.

Third, to support its construction, Universal Health relies on *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, which Universal Health contends is "instructive." But we conclude *Piplack* is distinguishable.

Like the agreement here, the one in *Piplack* required the employee to arbitrate any claims arising out of their employment. (*Piplack*, 88 Cal.App.5th at p. 1285.) The agreement further provided:

> "There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ('Private Attorney General Waiver'). The Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances, any private

10

attorney general claim must be litigated in a civil court of competent jurisdiction." (*Id.* at p. 1288.) Similar to here, the agreement further specified "'[t]he . . . Private Attorney General Waiver . . . shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.'" (*Id.* at p. 1285.) The employee, like Stewart, contended the agreement required the entire PAGA action to be litigated, not just the nonindividual representative PAGA claims. (*Id.* at p. 1288.)

The court of appeal concluded otherwise, noting "[t]he key point is the meaning of the phrase 'a private attorney general action.'" (*Piplack*, 88 Cal.App.5th at p. 1288.) Relying on the specific language of the agreement, *Piplack* concluded the claims were severable and that only the nonindividual representative claims, which were "a true qui tam, or 'private attorney general,' action," were entitled to proceed in court. (*Id.* at pp. 1288-1289.) It cited the provision making the PAGA waiver "severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration" as further supporting its interpretation. (*Id.* at p. 1289.)

Unlike the agreement in *Piplack*, however, the one here uses both the phrases "private attorney general representative action" and "private attorney general action," requiring a different interpretation of the phrase "private attorney general action" than that *Piplack* reached. We further disagree with *Piplack*'s conclusion that that second severability provision mandates that individual PAGA claims be arbitrated. The second severability provision, like the one here, only applies to "'any case in which *the dispute is filed as an individual action*.'" (*Piplack*, 88 Cal.App.5th at p. 1289, italics added.) The action here was filed on both Stewart's and other

11

employees' behalf.  The severability provision accordingly never comes into play.

Rather, the language here dictates an outcome akin to that in *Ford*.  In *Ford*, the employee "agreed to arbitrate any employment-related disputes," but the agreement expressly did not apply to "'representative claims under [PAGA].'"  (*Ford*, 110 Cal.App.5th at p. 558.)  The agreement further provided the parties "'expressly waive the right to commence arbitration or to file a complaint in court in the form of a class, collective, or representative action on behalf of others . . . .  In the event a court determines this waiver is unenforceable with respect to any claim, then this waiver shall not apply to that claim, that claim must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for that claim.'"  (*Id.* at pp. 558-559.)

The court of appeal affirmed the trial court's denial of the employer's motion to compel arbitration of the employee's individual PAGA claims.  (*Ford*, 110 Cal.App.5th at p. 570.)  Under the language of the agreement, *all* PAGA claims—both those brought on the employee's behalf as well as on behalf of others—were excluded from the scope of the arbitration agreement.  (*Id.* at p. 567.)  Notably, *Ford* concluded the addition of the phrase "on behalf of others" to the phrase "representative action" in the waiver provision, but not in the exclusion provision, meant the term "representative action" encompassed *all* PAGA claims, both individual and nonindividual.  (*Id.* at p. 569.)

Here, as in *Ford*, the parties used different language in defining the waived claims as opposed to the claims subject to litigation should the waiver be found unenforceable.  As in *Ford*, to effectuate those differences, we conclude the entire "private attorney general action"—including both the nonindividual representative PAGA claim and Stewart's individual PAGA

12

claim—must be litigated in court if the action is initiated in court and the waiver is found unenforceable. This interpretation does not, as Universal Health contends, "use [Stewart's] own violation of the Agreement's contractual provisions as the basis to argue that her individual claims should not be compelled to arbitration," but rather gives effect to the mutual intent of the parties at the time of the agreement's formation.

Accordingly, the trial court erred in compelling Stewart's individual PAGA claims to arbitration. We thus reverse the judgment confirming the arbitration award and remand for the court to (1) vacate the order compelling arbitration, (2) enter an order denying Universal Health's motion to compel arbitration, and (3) conduct further proceedings consistent with this opinion. (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 811.)

## B.

Stewart contends the trial court erroneously granted or denied several interlocutory orders.

## 1.

Reviewing the court's ruling on Stewart's summary adjudication motion de novo (*The Internat. Brotherhood of Boilermakers, etc. v. NASSCO Holdings Inc.* (2017) 17 Cal.App.5th 1105, 1114), we agree the trial court erred in denying the motion as "procedurally defective because it does not seek to completely dispose of the cause of action to which it is directed."

Universal Health argues that, for Stewart to move for summary adjudication of an issue that does not dispose of an entire cause of action or theory of liability, she was required to—but did not—obtain a stipulation from Universal Health. (Citing Code Civ. Proc., § 437c(t).) But that is not so.

As Universal Health acknowledges, under Code of Civil Procedure section 437c(f)(1): "A party may move for summary adjudication as to . . . one

13

or more issues of duty, if the party contends . . . that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs.  A motion for summary adjudication shall be granted only if it completely disposes of . . . an issue of duty."  Indeed, "[d]uty, being a question of law, is particularly amenable to resolution by summary judgment" or adjudication.  (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)

Universal Health claims Stewart's "argument demonstrates a fundamental misunderstanding of what constitutes an 'issue of duty'" under the statute because "[c]ourts have repeatedly found that the Legislature intended the words 'issue of duty' as used in Section 437c(f)(1) to apply to common law negligence causes of action and to the existence or nonexistence of a contractual duty."  (Citing *Linden Partners v. Wilshire Linden Associates* (1998) 62 Cal.App.4th 508, 518.)

But the language of section 437c(f)(1) is broad and not limited to contractual or tort duties.  Indeed, courts have resolved questions of statutory duty on motions for summary adjudication.  (E.g., *NASSCO Holdings*, 17 Cal.App.5th at pp. 1113, 1128 [affirming determination employer had statutory duty to employees]; *Public Utilities Com. v. Superior Court* (2010) 181 Cal.App.4th 364, 381 [reversing summary adjudication denial of whether commission owed statutory duty and compelling court to enter order granting summary adjudication].)  Whether Universal Health owes its employees a duty under IWC Wage Order 5 is therefore appropriate for summary adjudication.

Universal Health also argues Stewart's motion improperly asks the court to determine it not only owed a duty but also breached that duty, relying on a statement in *Paramount Petroleum Corporation v. Superior Court* (2014) 227 Cal.App.4th 226.  Universal Health's reliance, however, is

14

misplaced.  In *Paramount*, the plaintiff brought a breach of contract action against the defendant and sought summary adjudication of the defendant's liability but not damages.  (*Id.* at p. 229.)  The trial court granted the motion, but the court of appeal reversed because "summary adjudication cannot be granted in favor of a plaintiff on liability alone."  (*Ibid.*)  It concluded section 437c(f)(1) does not allow summary adjudication of whether a party breached a duty.  (*Id.* at pp. 243-244.)  While the plaintiff sought to construe the ruling "as a determination that Paramount owed it a contractual duty," the court declined to do so because the plaintiff "did not move for such an order." (*Id.* at p. 244.)

Here, Stewart sought to determine only "whether the Wage Order imposes on [Universal Health] a duty to provide and maintain the colored scrubs."  As Stewart argues, this issue does not decide liability because it leaves for subsequent determination whether, for example, Universal Health's later-implemented stipend to purchase colored scrubs discharged any such duty.

For these reasons, we conclude the court erred in denying Stewart's motion for summary adjudication, which sought a determination of an issue of duty as authorized by section 437c(f)(1).  Because the trial court denied Stewart's motion on a procedural ground and has not addressed it on the merits, we remand for the court to decide the motion in the first instance.

2.

Stewart also seeks review of the trial court's orders granting Universal Health's motions for summary adjudication and to limit potential PAGA penalties.  We decline to exercise our discretion under section 906 to review these interlocutory orders as part of this appeal.

15

Under section 906, "the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party." This authority to review interlocutory orders is discretionary rather than mandatory. (*POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 90.)

The interlocutory orders from which Stewart appeals did not affect the judgment or substantially affect any party's rights because (1) the arbitrator decided Universal Health's motion for summary adjudication de novo and (2) PAGA penalties were never assessed given judgment was in favor of Universal Health. While the motions do involve the merits of the litigation, they could be mooted depending on the outcome of Stewart's motion for summary adjudication. Accordingly, we decline to reach the merits of these motions in this appeal.

### III.

We reverse the judgment confirming the arbitration award and remand to the trial court with directions to (1) vacate the order compelling arbitration, (2) enter a new order denying the motion to compel arbitration, (3) vacate the order denying Stewart's motion for summary adjudication, and (4) conduct further proceedings consistent with this opinion.  Stewart shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

17